```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------- X
ALEXANDER ORENSHTEYN,              :
                                   :
              Plaintiff,           :
                                   :
    - against -                    :    No. 02 Civ. 5074 (JFK)
                                   :
INTERNATIONAL BUSINESS MACHINES,   :    OPINION & ORDER
CORP.,                             :
                                   :
              Defendants.          :
---------------------------------- X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Oct. 25, 2013

APPEARANCES

FOR PLAINTIFF ALEXANDER ORENSHTEYN:
    Joseph Zito
    ZITO TLP

FOR DEFENDANT INTERNATIONAL BUSINESS MACHINES, CORP.:
    Marc Pensabene
    Santiago Velez
    FITZPATRICK, CELLA, HARPER & SCINTO

**JOHN F. KEENAN, United States District Judge:**

    Before the Court is Defendant International Business Machines Corporation's ("IBM") motion for summary judgment. For the reasons that follow, the motion is granted.

## I.  Background

    In a complaint dated July 1, 2002, Plaintiff Alexander Orenshteyn alleges that he is the sole owner of United States Letters Patent Nos. 5,889,942 (the "'942 Patent") and 6,393,569 (the "'569 Patent") for an invention entitled "Secured System for Accessing Application Services from a Remote Station." The

patents involve a system by which individual "client" computer stations interact with remote "server" computers.  Computer programs run on the server, but the programs only save data to the client computers. See Pl. Opp. at 3 ("The key to Orenshteyn's alleged invention is limiting access to the program server, which only serves programs and does not allow remote control, while allowing one or more client computers, that are accessing the application programs running on the server, to maintain each client's permanent data storage on the client computer.").

This case[1] was stayed and later administratively closed pending the outcome of a similar case brought by Plaintiff against Citrix Systems in the Southern District of Florida.  In that action, Plaintiff asserted infringement of the same patents at issue here against Citrix.  Concluding that Plaintiff had failed to show that Citrix's products infringed upon his patents, the Florida court granted summary judgment in favor of Citrix. See Orenshteyn v. Citrix Sys., Inc., 265 F. Supp. 2d 1323 (S.D. Fl. 2003), aff'd in part, rev'd in part, 341 F. App'x 621 (Fed. Cir. 2009).  On appeal, the Federal Circuit agreed with the lower court that Plaintiff had not shown evidence of infringement of the '569 Patent, but remanded as to the '942

---

[1] This Court also presides over a second action filed by Plaintiff against IBM regarding the same patents. See Orenshteyn v. Int'l Bus. Machines, Corp., No. 11 Civ. 5553.

2

Patent because it concluded that the lower court had misconstrued part of that patent's Claim 1. See 341 F. App'x at 624-26.  Although the parties resumed their litigation in the Southern District of Florida, they agreed to reopen the instant case.  This Court entered an order lifting the stay on March 8, 2011.

The very next day, the Florida district court again granted summary judgment to Citrix, holding that five pieces of prior art rendered Claim 1 of the '942 Patent invalid. See Orenshteyn, No. 02-60478-Civ (S.D. Fl. Mar. 9, 2011) (ECF No. 371), aff'd, 501 F. App'x 981 (Fed. Cir. 2013) (per curiam).  The Federal Circuit affirmed the decision without comment. See 501 F. App'x 981.

In the instant motion, IBM argues that the basis for the Florida court's ruling as to Claim 1 of the '942 Patent "applies equally to all of the Orenshteyn patent claims asserted in this case." (IBM Br. at 4.)  The Florida court relied upon the report of Citrix's expert, Dr. José A.B. Fortes, who opined that Claim 1 of the '942 Patent is invalid in light of five pieces of prior art.  Dr. Fortes is now retained as IBM's expert in the instant case.  IBM relies on the five pieces of prior art put forth by Dr. Fortes in Florida, and sets forth three additional pieces of prior art that purportedly also provide a basis to invalidate the claims in Plaintiff's patents.

3

Although Plaintiff has made allegations regarding different claims over the long life of this litigation, at present he only asserts infringement of Claims 14 and 56 of the '942 Patent, and Claim 1 of the '569 Patent (together, the "Remaining Claims"). (Pl. Opp. at 1–2.)  IBM dismisses Claims 14 and 56 of the '942 Patent as containing "only minor variations" of invalid Claim 1 of the '942 patent. (IBM Br. at 22–23.).  Plaintiff responds that Claims 14 and 56 have an additional limitation that makes them patentably distinct from invalid Claim 1.

With respect to Claim 1 of the '569 Patent, IBM argues that all of its limitations are identical to those found in Claim 1 of the '942 Patent, which was held invalid by the Florida court. Plaintiff concedes that Claim 1 of the '569 Patent "claims similar subject matter to Claim 1 of the '942 Patent."  But Plaintiff contends that the decision of the Florida court, which was affirmed by the Federal Circuit, should not be applied "reflexively" because Plaintiff argues that the prior ruling was a "default decision." (Pl. Opp. at 19.)

## II.  Discussion

### A.  Legal Standards

#### 1.  Summary Judgment

A movant is entitled to summary judgment where the evidence, viewed in the light most favorable to the non-movant, shows that "there is no genuine issue as to any material fact

4

and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); <u>Vacold LLC v. Cerami</u>, 545 F.3d 114, 121 (2d Cir. 2010) (citing <u>Allianz Ins. Co. v. Lerner</u>, 416 F.3d 109, 113 (2d Cir. 2005)).  The movant bears the initial burden of demonstrating "the absence of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  Where the moving party meets that burden, the opposing party must then come forward with specific evidence demonstrating the existence of a genuine dispute of material fact. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986). "The mere existence of a scintilla of evidence in support of the non-movant's position will be insufficient; there must be evidence on which the jury could reasonably find for the non-movant." <u>Hayut v. State Univ. of N.Y.</u>, 352 F.3d 733, 743 (2d Cir. 2003) (alterations omitted).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." <u>Anderson</u>, 477 U.S. at 248.

Generally, a court should not make credibility determinations about competing experts when deciding a summary judgment motion, because "credibility issues are normally resolved by a jury based on the in-court testimony." <u>City of New York v. Golden Feather Smoke Shop, Inc.</u>, No. 08 Civ. 3966, 2013 WL 1334220, at *18 (E.D.N.Y. Mar. 29, 2013) (citing <u>Jeffreys v.

5

City of New York, 426 F.3d 549, 551 (2d Cir. 2005)); see also Scanner Techs. Corp. v. Icos Vision Sys. Corp., 253 F. Supp. 2d 624, 634 (S.D.N.Y. 2003).  Nevertheless, the mere existence of conflicting experts in a case is not a per se bar on the entry of summary judgment. In re Omnicom Grp., Inc. Secs. Litig., 597 F.3d 501, 512 (2d Cir. 2010) (citing Raskin v. Wyatt Co., 125 F.3d 55, 65 (2d Cir. 1997)).  If, after construing the expert reports in the non-movant plaintiff's favor, the court concludes that a report is "insufficient to permit a rational juror to find in favor of the plaintiff, the court remains free to . . . grant summary judgment for defendant." Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256, 267 (2d Cir. 2002).

### 2. Collateral Estoppel

Collateral estoppel "prevents relitigation in a subsequent action of 'an issue of law or fact actually litigated and decided by a court of competent jurisdiction in a prior action.'" Olin Corp. v. Am. Home Assurance Co., 704 F.3d 89, 98 (2d Cir. 2012) (quoting Ali v. Mukasey, 529 F.3d 478, 489 (2d Cir. 2008)).  A party may not relitigate an issue where "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits."

6

E.g., Proctor v. LeClaire, 715 F.3d 402, 414 (2d Cir. 2013). See generally Aspex Eyewear, Inc. v. Zenni Optical Inc., 713 F.3d 1377, 1380 (Fed. Cir. 2013) (noting that regional circuit precedent guides collateral estoppel analysis).

"In the field of patent law, the Federal Circuit has counseled that collateral estoppel may apply to patent claims that were not previously adjudicated, because the 'issues litigated, not the specific claims around which the issues were framed' are determinative." Medinol Ltd. v. Guidant Corp., 341 F. Supp. 2d 301, 314 (S.D.N.Y. 2004) (quoting Westwood Chem., Inc. v. United States, 525 F.2d 1367, 1372 (Ct. Cl. 1975)). Courts in this district have further noted that collateral estoppel "forecloses patent claims that are 'patentably distinct' from rejected claims." Purdue Pharma L.P. v. Ranbaxy Inc., No. 10 Civ. 3734, 2012 WL 3854640, at *3 (S.D.N.Y. Sept. 5, 2012); see In re Deckler, 977 F.2d 1449, 1452 (Fed. Cir. 1992).

### 3. Substantive Patent Law

Patents are presumed valid, and a defendant must demonstrate invalidity by clear and convincing evidence. Microsoft Corp. v. i4i Ltd. P'ship, 131 S. Ct. 2238, 2243 (2011). Patents may contain both independent claims and dependent claims. Independent claims do not rely on any other claims. Dependent claims refer to another claim, and not only

7

include all of the limitations of the referenced claim but also add at least one more limitation. See 35 U.S.C. § 121(c)-(d). The presumption of validity applies to dependent claims even if the independent claim upon which they rely is invalid. See 35 U.S.C. § 282(a).

"It is elementary in patent law that, in determining whether a patent is valid and, if valid, infringed, the first step is to determine the meaning and scope of each claim in suit." Lemelson v. Gen. Mills, Inc., 968 F.2d 1202, 1206 (Fed. Cir. 1992). However, because IBM accepts Plaintiff's proposed claim constructions for the purposes of its summary judgment motion, this Court need not construe the disputed claims. See F & G Research, Inc. v. Google Inc., No. 06-60905-Civ, 2007 WL 2774031, at *9 (S.D. Fl. Sept. 21, 2007) ("It is proper in a motion for summary judgment to accept the claim construction proposed by the party opposing summary judgment if such construction is not disputed by the moving party." (citing Rogers v. Desa Int'l, Inc., 166 F. Supp. 2d 1202, 1204 (E.D. Mich. 2001), aff'd, 198 F. App'x 918, 921 (Fed. Cir. 2006))).

A patent claim is invalid if it is anticipated by the prior art, that is, "where 'each and every limitation is found either expressly or inherently in a single prior art reference.'" ArcelorMittal France v. AK Steel Corp., 700 F.3d 1314, 1322 (Fed. Cir. 2012) (quoting Celeritas Techs., Ltd. v. Rockwell

Int'l Corp., 150 F.3d 1354, 1361 (Fed Cir. 1998)); see also MEHL/Biophile Int'l Corp. v. Milgraum, 192 F.3d 1362, 1365 (Fed. Cir. 1999) ("Under the principles of inherency, if the prior art necessarily functions in accordance with, or includes, the claimed limitations, it anticipates."). "Whether a patent claim is anticipated, and thus not novel, is a question of fact." In re OxyContin Antitrust Litig., No. 04 Md. 1603, 2013 WL 1608401, at *5 (S.D.N.Y. Apr. 15, 2013) (citing In re Gleave, 560 F.3d 131, 1334–35 (Fed. Cir. 2009)).

Alternatively, a patent claim may be held invalid "if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains." 35 U.S.C. § 103. Obviousness is a question of law, "based on underlying facts." Soverain Software LLC v. Newegg Inc., 705 F.3d 1333, 1336 (Fed. Cir. 2013). In addition to statutory obviousness, the Federal Circuit has explained that judicially created doctrine of obviousness-type double patenting was

> intended to prevent the extension of the term of a patent . . . by prohibiting the issuance of the claims in a second patent not patentably distinct from the claims of the first patent. A later patent claim is not patentably distinct from an earlier claim if the later claim is obvious over, or anticipated by, the earlier claim. As with statutory obviousness under 35 U.S.C. § 103, obviousness-type double patenting is

9

>an issue of law premised on underlying factual inquiries.

Eli Lilly & Co. v. Teva Parenteral Meds., Inc., 689 F.3d 1368, 1376 (Fed. Cir. 2012) (citation and internal quotation marks omitted). One way an applicant can overcome an obviousness-type double patenting rejection is by filing a terminal disclaimer, which limits the term of the later patent (and the protection afforded thereto) to the same period as the earlier one, "thereby guaranteeing that the second patent would expire at the same time as the first." In re Longi, 759 F.2d 887, 894 (Fed. Cir. 1985); see 37 C.F.R. § 1.321(c).

### B.   Analysis

IBM's summary judgment motion asserts the invalidity of Claims 14 and 56 of the '942 Patent, as well as Claim 1 of the '569 patent. To decide the motion, the Court must determine the extent to which Plaintiff is collaterally estopped by the opinion from the Southern District of Florida, affirmed by the Federal Circuit, which invalidated Claim 1 of the '942 Patent. If the Florida decision has preclusive effect, then any issues decided by that court cannot be relitigated here. If collateral estoppel does not apply, or if there are issues here that were not decided in Florida, then the Court must independently make a validity determination based on those outstanding issues.

10

### 1. Collateral Estoppel Applies Because the Florida Court's Opinion Was Not a Default Judgment

As mentioned earlier, Plaintiff has dropped his infringement argument as to Claim 1 of the '942 Patent because the Florida court held that claim to be invalid, in a decision upheld by the Federal Circuit. But Plaintiff asserts that his prior counsel neglected to fully litigate the summary judgment motion in the Florida action, which prevented the Florida court's from assessing the validity of Plaintiff's patents. Although Plaintiff's prior counsel did oppose the motion, and filed a memorandum of law in opposition, Plaintiff now points to the Florida court's conclusion that his prior counsel did not meet its burden because counsel did not offer an expert or evidence rebutting Dr. Fortes' testimony for the defense. (Pl. Opp. at 19-20 (citing Orenshteyn, No. 02-60748-Civ. (ECF No. 371 at 5-6)).) Plaintiff now argues that the Florida court's finding "should not be applied reflexively" because it was "not a decision on the mertits [sic], it was a default decision." (Id. at 19.)

The term of art "default" is more narrowly defined than Plaintiff urges. Default occurs when the non-movant "has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). Through his prior counsel, Plaintiff pled and lost in Florida. He then appealed the decision to the Federal Circuit, at which point he was represented by his current counsel, and lost again. The

11

issue of whether the limitations of Claim 1 of the '942 Patent were anticipated by the prior art was thus actually litigated in the Southern District of Florida, and Plaintiff is therefore properly bound by the Florida court's decision. He is estopped from now asserting the validity of Claim 1 of the '942 Patent, as he conceded at oral argument. (Tr. at 15.)

More important, Plaintiff is estopped from litigating the <u>issues</u> he lost in the Southern District of Florida. See <u>Westwood Chem.</u>, 525 F.2d at 1372 ("It is the issues litigated, not the specific claims around which the issues were framed, that is determinative."); cf. <u>Bourns, Inc. v. United States</u>, 537 F.2d 486, 491 (Ct. Cl. 1976). Thus, the Court must determine whether the question of the Remaining Claims' validity raises the same issues as were already decided in Florida.

**2.   Claim 1 of the '569 Patent Does Not Present New Issues**

In opposing summary judgment, Plaintiff is barred from relitigating any issues here that were already decided by the Florida court. IBM argues that with respect to the Claim 1 of the '569 Patent, all of the relevant issues have been decided because this Claim 1 and the invalid Claim 1 of the '942 Patent are so similar.

First, IBM points out that the Patent Office originally rejected all claims of the '569 Patent as duplicative of the '942 Patent, under the doctrine of "obviousness-type double

12

patenting." (IBM Br. at 6-7.) The rejection notice from the Patent Office states: "Although the conflicting claims are not identical, they are not patentably distinct from each other because the claimed differences are obvious . . . ." (IBM Br. Ex. 5.) The Patent Office accepted the '569 Patent after Plaintiff filed a "terminal disclaimer," which eliminates any patent protection for the period after the first patent (here, the '942 Patent) expires. Plaintiff now states that his filing of a terminal disclaimer was not an admission of no patentable distinction. Indeed, the law is clear that the terminal disclaimer cannot be treated as an admission. See U.S. Patent & Trademark Office, Manual of Patent Examining Procedure § 804.02 (8th ed. Rev. 9, Aug. 2012), available at http://www.uspto.gov/web/offices/pac/mpep/s804.html ("The filing of a terminal disclaimer to obviate a rejection based on nonstatutory double patenting is not an admission of the propriety of the rejection." (citing Quad Envtl. Techs. Corp. v. Union Sanitary Dist., 946 F.2d 870 (Fed. Cir. 1991))).

 IBM's expert, Dr. Fortes, also asserts that the prior art which invalidated Claim 1 of the '942 Patent also invalidates Claim 1 of the '569 Patent. Exhibits 19-26 of the first Fortes declaration, which are Dr. Fortes's comparisons of Plaintiff's proposed claim constructions to the known prior art, repeatedly state that Claim 1 of the '569 Patent includes "no additional

13

limitation beyond those" in invalid Claim 1 of the '942 Patent. Because all of these limitations were found to be anticipated by the Florida court, IBM argues that Claim 1 of the '569 Patent is necessarily invalid. (Reply at 4-5.)

In a table attached as Exhibit 29 to Dr. Fortes's second declaration, Dr. Fortes compares each Claim 1 line by line and plainly illustrates how similar the two Claims are. As noted, the only substantive changes in Claim 1 of the '569 Patent are to delete various requirements, which cause the claim to be broader, and thus even more susceptible to disclosure by the prior art, than the already invalidated Claim 1 of the '942 Patent. It is therefore clear that Claim 1 of the '569 Patent is not distinct from invalid Claim 1 of the '942 Patent in any way that raises a separate issue of material fact as to its validity. See Purdue Pharma L.P., 2012 WL 3854640, at *3.

Plaintiff and his expert attempt to raise issues of fact by arguing that several limitations in Claim 1 of the '569 Patent are not present in the prior art. But Plaintiff is precluded from making these arguments now because the Florida court rejected them when it found these same limitations (as listed in Claim 1 of the '942 Patent) to be present in the prior art. See Aspex Eyewear, 713 F.3d at 1381 (where a disputed claim contains the same limitations in the same context that have been found dispositive of non-infringement, "the assertion of different

14

claims in a subsequent suit does not create a new 'issue' to defeat preclusion" (citing Bourns, 537 F.2d at 491)). A jury could not accept Plaintiff's position without necessarily rejecting the decision of the Florida court, which was affirmed by the Federal Circuit. Therefore, because Claim 1 of the '569 Patent contains no limitations that were not present in invalid Claim 1 of the '942 Patent, it presents no new issues to decide, and collateral estoppel bars Plaintiff's argument. Summary judgment as to Claim 1 of the '569 Patent is therefore appropriate.

### 3. Claims 14 and 56 of the '942 Patent Are Invalid

IBM argues that Claims 14 and 56 of the '942 Patent are invalid in view of the prior art. It states that Claims 14 and 56 differ from invalid Claim 1 only in that they require two client stations, instead of merely allowing for more than one. Dr. Fortes opines in his declarations that Claims 14 and 56 are invalidated by the prior art, arguing that even if the Court concludes that the prior art did not disclose their features, "these features were well known" and "would have been obvious to one of ordinary skill in the art at the time." (Second Fortes Dec. at 11-12.)

Plaintiff's explanation for Claims 14 and 56 is basically consistent with IBM's characterization, except that Plaintiff emphasizes the simultaneous nature of the connection. See Pl.

15

Opp. at 3-4, 10 (noting that these claims "add the capability of the simultaneous connection of more than one client to a common server"); July 10, 1998 Amendment and Response at 39 (Plaintiff representing to PTO that Claim 56 "is similar to [invalid Claim 1] but requires the interaction of plural remote client stations with an application server"). Plaintiff states that the requirement of more than one client in Claims 14 and 56 allows for each client station to cooperate with the other(s) and share data or devices. This, he urges, constitutes an added limitation that is a patentable distinction between those Claims and invalid Claim 1, one that was not litigated in the Southern District of Florida and that is not disclosed in the prior art. These assertions are supported by Plaintiff's expert, Mr. Henry Kernius.

  The Court concludes that IBM has met its burden of showing that the prior art anticipates Claims 14 and 56. First, the Court agrees with IBM and Dr. Fortes that almost all of the limitations purportedly taught by those claims are also present in invalid Claim 1. The issue of whether those limitations were anticipated cannot be disputed in this case, because that issue was decided in the Florida litigation. See In re Deckler, 977 F.2d at 1452.

  The Court therefore turns to the limitations not present in invalid Claim 1. As mentioned above, the new limitation of

16

Claim 14 is the requirement of "at least two client stations." In Claim 56, this is referred to as "a plurality of client stations." IBM and its expert, Dr. Fortes, argue that the eight identified pieces of prior art disclose this limitation because they allow for at least two remote client connections. (Fortes Dec. Ex. 19 at 11.)

With respect to CoSession, pcANYWHERE, and ReachOut, Plaintiff and Mr. Kernius respond that the remote clients featured in those products cannot <u>simultaneously</u> connect to the host. Dr. Fortes disputes Mr. Kernius's reading of these products, but he does not explicitly state that they allow for simultaneous connection.[2]

With respect to Wabi and WinView, IBM states that these pieces of prior art disclose a system by which multiple client stations can connect to the server. As to Wabi, Plaintiff disputes Dr. Fortes's explanation of how the system works, and says that it does not establish a client/server system as contemplated in Claims 14 and 56. As to WinView, Plaintiff

---

[2]  Dr. Fortes also takes issue with this simultaneity requirement, because "'simultaneous' access is not expressly required by the language of claim 14 and the word 'simultaneous' is not found in this or any of the other asserted claims." (Second Fortes Dec. at 4, ¶ 9.) But IBM has opted to accept Plaintiff's proposed claim constructions for the purpose of this motion. (IBM Br. at 12.)  It is therefore appropriate to resolve the question in favor of Plaintiff, and for the purposes of deciding this motion, the Court treats the ability of the client stations to connect simultaneously to the remote server as a feature of Claims 14 and 56.

acknowledges that it "does potentially enables [sic] access by more than one client station," but urges that it "lacks many of the other claim limitations that are essential" to the Remaining Claims. (Pl. Opp. at 13.)

The Court agrees with the parties that WinView teaches the added limitation of simultaneous connection to more than one client station.  Accordingly, this limitation of Claims 14 and 56 is anticipated by WinView.  This is significant, because simultaneous connection is the only limitation not considered in the Florida ruling.  Plaintiff is estopped from arguing that WinView "lacks many of the other claim limitations" of his patents, because the Florida court has already determined that those limitations (all of which were present in Claim 1 of the '942 Patent) were anticipated by the WinView prior art.  And the Florida decision is plainly inconsistent with Plaintiff's argument that Wabi does not teach a client/server system.  As Plaintiff's counsel conceded at oral argument, this Court's ruling that simultaneous connection is anticipated means that Claims 14 and 56 are necessarily invalid as a matter of law. (Tr. at 18.)

As mentioned earlier, IBM offers three additional patents as prior art.  The parties and their experts disagree about whether the inventions in these patents are similar to Plaintiff's claims, and about whether all of the limitations in

18

the Remaining Claims are anticipated by the claims in these additional patents. It is not necessary for the Court to resolve this dispute, or to consider these patents at all, because summary judgment is warranted on the basis of the prior art that was before the Florida court, whose ruling was affirmed by the Federal Circuit.

### III. Conclusion

For the foregoing reasons, Defendant's motion for summary judgment is granted. Claims 14 and 56 of the '942 Patent, as well as Claim 1 of the '569 Patent, are invalid. It appears that this Opinion disposes of all of Plaintiff's outstanding infringement contentions. Accordingly, IBM's motion to strike Plaintiff's fourth version of his infringement contentions and to dismiss Plaintiff's complaint is denied as moot. The Clerk of Court is respectfully directed to close this case.

**SO ORDERED.**

Dated:     New York, New York
           October 25, 2013

                                    _____
                                    John F. Keenan
                                    United States District Judge